UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMARA LEE BRASFIELD,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Civil Action No. 17-11009

HON. NANCY G. EDMUNDS
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Tamara Lee Brasfield ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED and Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

### I. PROCEDURAL HISTORY

On December 24, 2013, Plaintiff filed an application for DIB, alleging disability as of February 15, 2012 (Tr. 126). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on August 11, 2015 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy C. Scallen (Tr. 33). Plaintiff, represented by attorney Elizabeth Currey, testified (Tr. 36-60), as did Vocational Expert ("VE") Michael Rosko (Tr. 61-63). On September 14, 2015, ALJ Scallen found that Plaintiff was not disabled (Tr. 20-28). On September 12, 2016, the Appeals Council denied review (Tr. 3-7). Plaintiff filed for judicial review of the final decision on March 30, 2017.

### II. BACKGROUND FACTS

Plaintiff, born November 17, 1973, was 41 when the ALJ issued his decision (Tr. 28, 126). She completed two years of college and worked previously as a cashier, nurse, and "Aide/Lead Worker" for the State of Michigan (Tr. 151). She alleges disability due to fibromyalgia, rheumatoid arthritis, pars planitis, Sjogren's Syndrome, depression, Chronic Fatigue Syndrome ("CFS"), stomach problems, "swelling," and muscle/joint pain, stiffness, and tenderness[1] (Tr. 150).

---

[1] Pars planitis, sometimes referred to as uveitis, is a disease of the eye that is characterized by "inflammation of the narrowed area (pars plana) between the colored part of the eye (iris) and the choroid." http://rarediseases.info.nih.gov/diseases/7339/pars-planitis. (Last visited June 4, 2018). Symptoms may include "blurred vision; dark, floating spots in the vision; and progressive vision loss." *Id.* "As the condition advances, cataracts, retinal detachment, or macular edema (fluid within the retina) may develop." *Id.* "Treatment typically includes corticosteroid drugs, immunosuppressive medications, and/or surgery."

A.     **Plaintiff's Testimony**

Plaintiff offered the following testimony.

Before becoming disabled in February, 2012, she performed managerial-type services at a Secretary of State office (Tr. 36). She did not have the authority to hire or fire personnel (Tr. 37). Her job required her to lift up to 60 pounds (Tr. 37). Before becoming disabled, she was allowed to perform some of her duties seated but her need to access inventory, make cash drops, and use a fax machine prevented her from remaining seated over the course of a workday (Tr. 39). She stopped working after experiencing stiffness, muscle pain, joint weakness, and frequent migraines (Tr. 40). She experienced the medication side effect of "hangover-type" symptoms from Imitrex (Tr. 41). She obtained better relief from migraines with Maxalt (Tr. 41-42).

In addition to the above-mentioned limitations, Plaintiff experienced vision problems characterized by "blobs" within her arc of vision, but the condition had not worsened in the past 18 months (Tr. 43). She wore glasses to avoid "glare" (Tr. 43). She also wore the glasses for distance vision, and as the result of a cataract (Tr. 44). Plaintiff experienced anxiety, stress, depression, and concentrational problems due to her physical conditions (Tr. 44). She took Xanax and another unnamed psychotropic drug (Tr. 45). She had been denied

---

Sjogren's Syndrome "is a disorder of your immune system identified by its two most common symptoms - dry eyes and a dry mouth." https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216. (Last visited June 4, 2018).

additional long-term disability benefits in August, 2012 because her disability provider did not believe that "there was anything wrong" (Tr. 46).

At present, Plaintiff was limited to lifting five pounds on an isolated basis due to hand, leg, and should weakness (Tr. 47). Due to lifting limitations, she was unable to grocery shop by herself (Tr. 47-48). She was unable to sit for more than 45 minutes at a time without requiring a five to ten minute change of position (Tr. 48). She was unable to stand for more than 90 minutes at a time (Tr. 49). She was unable to walk for longer than half a city block (Tr. 49). She experienced difficulty going up and down stairs (Tr. 49). Plaintiff stood just under 5' 4" and weighed around 240 pounds (Tr. 49). She was able to perform limited reaching but was unable to perform any kneeling (Tr. 50). She experienced pain and tightness of the cervical and thoracic spine (Tr. 51). She was diagnosed with Sarcoidosis in 2014 (Tr. 52). She experienced stress and anxiety while getting her teeth cleaned and due to problems related to her husband, children, money, insurance, and her ex-husband (Tr. 53). She experienced manipulative limitations due to joint swelling (Tr. 54). She was able to take care of her own personal needs (Tr. 55). She experienced vertigo on occasion when bending or reaching (Tr. 55).

Plaintiff's household chores were limited to dusting, easy meal preparation, and putting clothes in the washing machine (Tr. 56). She was able to drive to the pharmacy, doctors' appointments, and her children's school (Tr. 56). On a "bad" day, she experienced difficulty getting out of bed and going to the bathroom (Tr. 57). She experienced bad days

four or five days a week (Tr. 57). Her condition was worsened by cold weather (Tr. 57). She continued to socialize and bowled on rare occasions (Tr. 58). She was able to use a computer and enjoyed reading magazines and books (Tr. 58). On occasion, she experienced reading comprehension problems due to poor concentration (Tr. 59). She also experienced acid reflux disease (Tr. 59).

    B.    **Medical Evidence**

        **1. Treating Sources**

A February, 2011 polysomnography was positive for mild obstructive sleep apnea (Tr. 298). Plaintiff was advised to use a CPAP device and lose weight (Tr. 298). A chest x-ray from the following month was unremarkable (Tr. 296). December, 2011 records by rheumatologist Mona Trevidi, M.D. noted a diagnosis of fibromyalgia with "profound fatigue" and a skin rash (Tr. 225). She advised Plaintiff to pursue "more aggressive treatment" for fibromyalgia (Tr. 226).

January, 2012 imaging studies of the lumbar spine were unremarkable (Tr. 291). Imaging studies of the sinuses from the next month were consistent with chronic sinusitis (Tr. 289). Plaintiff underwent right eye injections in March, 2012 (Tr. 255). June, 2012 records by Dr. Trivedi note a history of uveitis requiring intra-ocular steroid injections (Tr. 223). Plaintiff reported that she did not experience "any benefit" from either of her current fibromyalgia medications (Tr. 223). She demonstrated full strength, a full range of motion, and a stable gait (Tr. 223). An August, 2012 imaging study was negative for a pulmonary

embolism (Tr. 211). The following month, Dr. Trivedi recommended a change of medication for uveitis (Tr. 233). In December, 2012 Plaintiff reported a one-week history of nausea and vomiting (Tr. 201). A CT of the abdomen showed fatty liver disease but was otherwise unremarkable (Tr. 206). March, 2013 therapy records note a depressed and anxious mood with a normal effect (Tr. 221). She reported symptoms of depression from 2008 forward (Tr. 218). June, 2013 therapy discharge records state that Plaintiff's mental health care was compromised by the fact that she scheduled 12 therapy sessions over the course of 12 months, but attended only five (Tr. 222).

Dr. Trivedi's September, 2013 records note that Plaintiff had not had a recurrence of inflammatory eye disease in the past year (Tr. 234). Dr. Trivedi noted pain behavior during range of motion studies (Tr. 235). Dr. Trivedi found that Plaintiff did not have active autoimmune disease (Tr. 235). Imaging studies of the chest from the same month were unremarkable (Tr. 286). December, 2013 imaging studies of the liver were consistent with earlier studies (Tr. 265-266, 327).

A January, 2014 gastric and duodenal biopsy showed inflamation consistent with reflux disease (Tr. 268, 332). A March, 2014 colonoscopy was positive for mild to moderate diverticulosis (Tr. 329). An April, 2014 imaging study of the chest was unremarkable (Tr. 283). In May, 2014, Plaintiff complained of dizziness and continued symptoms of fibromyalgia (Tr. 344). She demonstrated full muscle strength in all extremities (Tr. 345). June, 2014 records by Neil Alperin, M.D. note Plaintiff's report of neck and diffuse joint

pain (Tr. 342). She exhibited 16 of 18 trigger points (Tr. 342). She appeared well developed and nourished (Tr. 342). She reported that the fibromyalgia medication Savella was "too expensive" (Tr. 342). Dermatological records from the same month note Plaintiff's report of irritation of the face, head, and scalp (Tr. 368). Imaging studies of the bilateral hands, wrists, and feet were unremarkable (Tr. 347-348). A July, 2014 chest x-ray was essentially unremarkable (Tr. 352, 371). The same month Dr. Alperin noted that Plaintiff was well nourished and in no acute distress (Tr. 379). October, 2014 treatment records note Plaintiff's complaint of fatigue, right knee pain, and tightness of the hands, legs, and shoulders (Tr. 340). She exhibited 18 of 18 trigger points (Tr. 340). Plaintiff reported that in the past, Savella eased symptoms of fibromyalgia (Tr. 340).

### 2. Non-Treating Sources

In March, 2014, Melissa H. Rosenzweig, MA (acting on behalf of Nick Boneff, Ph.D.) performed a psychological examination, noting depression, anxiety, and crying spells due to family, physical, and financial problems (Tr. 276). Plaintiff reported sleep disturbances and distress due to her lack of health insurance and access to medication (Tr. 276). Plaintiff reported that she and her husband had lost their home and were currently living with her mother, step-father, and children (Tr. 277). She noted that she arose early to make breakfast for her sons, do light house cleaning, and made sure that her sons got to school on time (Tr. 277). She was able to care for her own personal needs, read, listen to music, and help her mother around the house (Tr. 277).

Ms. Rosenzweig observed good grooming, hygiene, and good eye contact (Tr. 277). Plaintiff exhibited a normal gait and was able to sit comfortably (Tr. 277). She did not exaggerate her symptoms but was "tearful and crying throughout the exam . . ." (Tr. 277). She denied suicidal or psychotic ideation but experienced feelings of hopelessness (Tr. 278). Ms. Rosenzweig diagnosed Plaintiff with "persistent depressive disorder" (Tr. 279). She found "no limitations" in Plaintiff's "ability to understand, remember, or carry out simple instructions" (Tr. 279). She found the ability to perform simple or multi step tasks at a sustained pace "mildly limited" (Tr. 279). She found an "adequate" ability to interact with others and accept instruction (Tr. 279). She found "no significant" social limitations (Tr. 279).

In March, 2014, Rose Moten, Ph.D. performed a non-examining review of the treating and consultative psychological records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, or pace (Tr. 71-72). The same month, Sonia Ramirez-Jacobs, M.D. performed a non-examining review of the records pertaining to Plaintiff's physical conditions, finding that she retained the ability to lift 10 pounds; stand or walk two hours, and sit for six hours in an eight-hour workday; and push and pull without limitation (Tr. 73). Dr. Ramirez-Jacobs found that Plaintiff could balance, stoop, kneel, crouch, and climb stairs and ramps occasionally, but was precluded from all crawling and climbing of ladders, ropes, or scaffolds (Tr. 74). Dr. Ramirez-Jacobs found the absence of

manipulative limitations but found that Plaintiff should avoid concentrated exposure to weather extremes, wetness, and hazards (Tr. 74-75).

**3. Evidence Submitted Subsequent to the ALJ's September 14, 2015 Determination[2]**

In April, 2014, Plaintiff reported some degree of dizziness when arising from a sitting position (Tr. 398). October, 2014 records note a possible diagnosis of sarcoidosis (Tr. 395). November, 2014 treating records note that Plaintiff was referred to a therapist for depression (Tr. 394). February, 2015 treating records show the presence of multiple trigger points (Tr. 393). A chest x-ray was negative for abnormalities (Tr. 408). March, 2015 treating records note Plaintiff's report of stomach aches (Tr. 391). Plaintiff was prescribed Toradol for body pain (Tr. 391). April, 2015 treating records note the presence of "trigger points" and Plaintiff's report of fatigue (Tr. 389). An MRI of the abdomen from the same month, similar to a February, 2015 MRI, was consistent with fatty liver disease (Tr. 405-406). The study was otherwise unremarkable (Tr. 405).

    **C.    Vocational Expert Testimony**

VE Michael Rosko classified Plaintiff's past relevant work as a driver's license clerk as exertionally light (medium as performed) and semiskilled; and work as a "lead worker,"

---

[2] Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). To establish grounds for a "Sentence Six" remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." § 405(g). Plaintiff has not provided "good cause" for the late submission of the these records or cite them in his arguments for remand. Moreover, my own review of the these records indicates that they do not justify a remand.

light (medium as performed) and skilled[3] (Tr. 61). The ALJ then posed the following set of hypothetical restrictions, taking into account Plaintiff's age, education, and work history:

> [S]edentary [exertional] level; occasional climbing of stairs and ramps; no climbing of ropes, ladders, scaffolds; further limited to occasional balancing, stooping, kneeling, crouching, and crawling; also limited to avoiding concentrated exposure to unprotected heights, machinery; also avoid concentrated exposure to extreme hot and cold temperatures as well as a wet environment; also limited to simple, routine, repetitive tasks, with those limitations, could she do her past work? (Tr. 61).

Based on the above restrictions, the VE testified that the hypothetical individual would be unable to perform Plaintiff's past relevant work but could perform the sedentary positions of document scanning (5,000 positions in the national economy); assembler (36,000); and sorter (7,500) (Tr. 62). He testified further that the additional need for a sit/stand option would allow for around 80 percent of the assembly and sorting positions (Tr. 62). He testified that a limitation to frequent handling, reaching, fingering, and feeling would not change the job numbers but that a limitation to occasional (rather than frequent) along with the other hypothetical limitations, would preclude all work (Tr. 62). The VE testified that the need to be off task for more than 10 percent of the workday (aside from regularly scheduled breaks) or, the need to miss more than two days of work each month would

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

preclude all unskilled work (Tr. 63).

### D. The ALJ's Decision

Citing Plaintiff's treating records, ALJ Scallen found that Plaintiff experienced the severe impairments of "fibromyalgia, arthralgia, obesity, [and] a depressive disorder" but that none of the impairments met or equaled a listed impairment found in 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 22-24). The ALJ found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation in concentration, persistence, and pace (Tr. 24). He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally sedentary work with the following additional limitations:

> [S]imple, routine sedentary exertional work . . . with occasional postural movements and climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; and no exposure to unprotected heights, wetness, humidity, or cold temperatures (Tr. 25).

Citing the VE's findings, the ALJ found that while Plaintiff was unable to perform any of her past relevant work, she could perform the sedentary, unskilled work of a document scanner, assembler, or sorter (Tr. 27, 62).

The ALJ discounted Plaintiff's allegations of limitation, citing the treating records showing good joint strength and imaging studies showing no arthritic or inflammatory process (Tr. 25). He noted that despite the presence of fibromyalgia symptoms, Plaintiff experienced good results with medication (Tr. 26). As to Plaintiff's allegations of psychological limitation, the ALJ found that despite the situational stressors, Plaintiff's "contact with reality, cognition, and memory are not seriously compromised" and that her

allegations of limitations were undermined by her failure to attend therapy sessions (Tr. 26). He observed that Plaintiff was able to engage in light housework, drive, shop, handle her finances, and attend her children's sporting events (Tr. 26).

### **III. STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. Fibromyalgia

In her first argument, Plaintiff disputes the ALJ's determination that the condition of fibromyalgia was not disabling. *Plaintiff's Brief,* 12-18, *Docket #13,* Pg ID 464. She contends that the ALJ's findings regarding the condition contain an actual misstatement of the record. *Id.* at 13-16. She also argues that the ALJ improperly cited her intermittent

activities such as attending sporting events and shopping to support the conclusion that she was capable of full-time work. *Id.*

SSR 12-2p governs the analysis of fibromyalgia. 2012 WL 3104869 (July 25, 2012). Under SSR 12-2p, a finding that a claimant has the medically determinable impairment ("MDI") of fibromyalgia requires a diagnosis by an "acceptable medical source." *Id.* at *2. The evidence must also "document that the physician reviewed the person's medical history and conducted a physical exam." *Id.* Here, the ALJ acknowledged both that the condition was an MDI and that Plaintiff experienced the severe impairment of fibromyalgia (Tr. 22, 25-26).

Nonetheless, the mere finding that the condition is an MDI and a severe impairment does not establish disability. SSR 12-2p directs that in determining whether the condition creates disability level limitation, the ALJ must also analyze the record pursuant to SSR 96-7p, 1996 WL 362209 (July 2, 1996).[4] *Id.* at *5. The applicable prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [5]

---

[4]More commonly, the SSR 96-7p analysis is currently used in making credibility determinations.

[5]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in addressing the second prong of SSR 96-7p:

The ALJ did exactly that. Citing SSR 96-7p, he acknowledged that Plaintiff "displayed symptoms of fibromyalgia on clinical examination . . ." (Tr. 26). However, he found that Plaintiff's allegations of *disabling* limitation were contradicted by the record. He noted that none of her treating sources found that the condition precluded sedentary work (Tr. 26). He observed that Plaintiff "demonstrated improvement with the proper medication" (Tr. 26 *citing* Tr. 340). While Plaintiff argues that the finding that she improved with medication stands at odds with Dr. Trivedi's November, 2011 statement that "even with Savella [a medication prescribed to quell symptoms of fibromyalgia], she notes no improvement in her symptoms" (Tr. 227). However, in making the determination that Plaintiff's symptoms were eased with medication, the ALJ relied on Dr. Alperin's October, 2014 statement that "the only medication that ever helped her was Savella" (Tr. 340). The fact that the November, 2011 and October, 2014 records contain conflicting statements is of no import. In determining "whether substantial evidence supports the ALJ's decision, we do not try the

---

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

case *de novo*, resolve conflicts in evidence, or decide questions of credibility."[6] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)(*citing Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)). As such, the ALJ's finding that Plaintiff experienced improvement by taking Savella should remain undisturbed.

Moreover, the ALJ's finding that the symptoms of fibromyalgia were limiting but did not preclude a significant range of sedentary work is well supported by Plaintiff's own account of her regular activities. The ALJ noted that despite Plaintiff's testimony that she could "hardly get out of bed" four to five days a week, she admitted that she was able to "engage in light housework," prepare simple meals, drive, shop, handle her finances, and regularly attend her children's sporting events (Tr. 26). Plaintiff reported to a consultative examiner that she typically arose early, made her sons breakfast, performed light house cleaning, cared for her own personal needs, read, listened to music, and helped her mother perform household chores (Tr. 277). The evidence from the relevant period showing that medicine eased Plaintiff symptoms, coupled with the fairly wide range of activities performed on a *regular* basis, supports the ALJ's finding that fibromyalgia did not preclude full-time, sedentary work.[7] *See Cruse v. CSS*, 502 F.3d 532, 542 (6th Cir. 2007)(ALJ's

---

[6]Moreover, Plaintiff alleges disability from February 15, 2012 forward. Dr. Trivedi's November, 2011 finding predates the relevant period by over three months (Tr. 227).

[7]

Plaintiff cites *Cohen v. Secretary of Dept. of Health and Human Services*, 964 F.2d 524, 531 (6th Cir. 1992), arguing that her ability to engage in household chores and other activity on a limited basis, by itself, does not equate with full-time employment. *Plaintiff's*

determination that Plaintiff's allegations of limitation not fully credible entitled to deference).

### B. The Psychological Limitations

In her second argument, Plaintiff contends that the ALJ's "one paragraph analysis" of her psychological limitations is not sufficiently detailed to permit judicial review. *Plaintiff's Brief* at 13-20. She cites the following paragraph from the administrative decision:

> The claimant may be anxious and overwhelmed because of health, personal, and financial worries, but her contact with reality, cognition, and memory are not seriously compromised, and she undermines her credibility by not being compliant with therapy sessions. She has crying spells and feelings of guilt for not providing more for her children, but she is not psychotic, paranoid, or suicidal. Her memory is suitable for sustained work activity. Ms. Rosenzweig saw no barriers to her being able to follow simple, routine instructions and interact properly with other people. The undersigned therefore disregards the low GAF score of 38 since it is clearly unsupported by the actual clinical findings (Tr. 26).

Plaintiff argues that the mere fact that she is not "psychotic, paranoid, or suicidal" does not imply that she is psychologically capable of full-time work. *Plaintiff's Brief* at 19.

However, read in context, the ALJ's observation that Plaintiff was not psychotic, paranoid, or suicidal, does not constitute his rationale for concluding that she could perform

---

*Brief* at 16. *Cohen* holds that the ability to engage in intermittent activities, (two law school courses a year and efforts to engage in ballroom dancing on a limited basis) does not by itself establish non-disability. In contrast here, Plaintiff's *ongoing* activities stand at odds with a finding of disability. She admitted to rising early as a matter of routine, helping her children prepare for school, and performing household chores on a limited but regular basis (Tr. 277). Her ability to adhere to a schedule and perform household chores on a regular basis, coupled with her ability to read books, use a computer, and help her mother with house chores undermines her claims of disability as a result of fibromyalgia.

a range of unskilled work (Tr. 26). Rather, the ALJ was explaining his reasons for rejecting a June, 2013 finding that Plaintiff had a GAF of 38 (Tr. 222). Under the *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000), a GAF score of 31 to 40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." The ALJ observed that neither the treating nor consultative records supported a GAF reflecting extreme limitations (Tr. 26).

Further, the ALJ adequately explained his reasons for finding that Plaintiff was psychologically capable of full-time, unskilled work. He adopted Dr. Ramirez-Jacobs non-examining finding that Plaintiff experienced moderate limitation in concentration, persistence, or pace (Tr. 71). The ALJ's finding that Plaintiff retained the ability to perform unskilled "simple, routine" tasks (Tr. 25) despite some degree of concentrational limitation is supported by Ms. Rosezweig's consultative finding that Plaintiff had "no limitations" in the "ability to understand, remember, or carry out simple instructions" and a fairly wide range of regular activities. The VE's testimony that a restriction to unskilled, simple, and routine work would allow for a significant range of work constitutes substantial evidence in support of the Step Five conclusion (Tr. 27, 62). *See Smith–Johnson v. CSS*, 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations in carrying out detailed instructions and maintain attention and concentration for extended periods adequately addressed by restricting the claimant to unskilled, routine,

repetitive work); *Despain v. CSS*, 2014 WL 6686770, *12 (E.D. Mich. November 26, 2014)(same); *Lewicki v. CSS*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010) (the modifiers of "simple routine work" adequately accounted for the claimant's moderate concentrational deficiencies).  Because the conclusion that Plaintiff was capable of simple, routine work is well supported by the record, a remand on this basis is not warranted.

 In closing, I note that my recommendation to uphold the administrative findings should not be interpreted to wholly discount Plaintiff's claims of physical and psychological limitations.  However, because the ALJ's determination is supported by substantial evidence and is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen*, *supra*.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED and Plaintiff's Motion for Summary Judgment [Docket #13] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.

1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 8, 2018
s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

### CERTIFICATE OF SERVICE

I hereby certify on June 8, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on June 8, 2018.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen